Welcome to both of you to this Jackson, Mississippi Fifth Circuit argument. You may not have known that, but the three judges are all in the courthouse in Jackson in our different chambers keeping away from each other with false backgrounds. I don't want you to think anything else about this is false, but we really don't have those panels behind us. This is the third case of the day. Cunningham v. Kestlew, and if I pronounced it wrong, you will correct me. I have no doubt. We'll hear from the appellant. Thank you, Judge Southwick, and may it please the court. My name is David Iglesias, and I represent the appellant Sheriff Thomas Caslow in this appeal. Your honors, despite a conscientious effort, the district court aired and denying qualified immunity to Sheriff Caslow for two reasons. I'll begin by addressing the fact that appellees constitutional rights were never violated by the alleged denial of the name clearing hearing, and then I'll address Sheriff Caslow's entitlement to qualified immunity in light of the fact that not all reasonable law enforcement officers in his position would believe that under these circumstances, denying the appellee a name clearing hearing would have violated her due process rights. Let me ask you the status of this case. My understanding of one of the last orders entered is everything was stayed or otherwise is being held until we get to this case. But Wood County is still a defendant in this action in district court. That's correct, Your Honor. Wood County is still a defendant. The only defendants, the sheriff and the county. Yes, sir. That's correct. All right. Proceed. And it's clear that the sheriff is being sued in his individual capacity, and that is what's before us. Yes, Your Honor. That's right. This is the appeal of the sheriff's of the denial of the request for qualified immunity from the appellee's claims in his individual capacity. Yes, sir. In his individual case, he's probably the policymaker as well of the county. He is. He is. As far as, um, uh, the sheriff's office is concerned, but he's also being sued individually. Okay. We say. Also, you're there's not an amended complaint. Is there? There's just the original complaint. As I recall, there was only one complaint. Yes. Yes. It starts by saying your client brings this action against Wood County and Thomas Castle in his individual capacity. So you have no official capacity sued against the sheriff is I read the complaint anyway. That's correct, Your Honor. All right, proceed. And the first and most clear reason that the district court's denial of qualified immunity should be reversed is that the evidence in the record, which consists largely of the appellee's own testimony, negates at least four of the essential elements of the claim that she attempts to make in bled so versus the city of Horn Lake, Mississippi. This court held that the plaintiffs who allege a violation of their due process right to a name clearing hearing must produce evidence of seven elements. In this case, however, the evidence in the record shows negates four of those elements. First of all, it shows that the charges against the against the appellee were true. Second, the appellee was provided with notice and with an opportunity to be heard prior to her termination. Third, she never requested a hearing to clear her name and fourth, even if the appellee had requested a name clearing hearing, uh, Sheriff Caslow never denied appellee a name clearing hearing. Um, your honors. Uh, the record in this case clearly shows that the appellee responded untruthfully whenever Sheriff Caslow asked her to identify the people with whom she had discussed her allegations that a co worker had falsified his Sheriff Caslow's question was not open ended whenever he asked her to identify these people. He didn't limit that to in time or scope or any other way. The appellee herself testified that when responding to this question, she omitted at least the names of at least six people with whom she had. So we're here on on now. So many judgment on this issue of qualified immunity. And there's a response that we'll hear from Mr Messer as as to what all she understood she was answering to. Um, and she did try again based on the allegations, the assertions and evidence that she's presented so far. She tried to correct the one that she thought she should have told the sheriff, but able to do so. It certainly seems to me that how much she understood she had to identify how many people he identified people before she went to work for the Wood County Sheriff's Office. Was he asking about those? Was he asking about people on and within the sheriff's department? Sure sounds to me like you're getting into disputes of material fact on this issue. Maybe not on everything, but on this one. Well, your honor, I believe that with regard to this issue, there's the any fact dispute wouldn't be material because the record shows that Miss Cunningham, she testified that this question was open ended and everyone in the universe. And she didn't, uh, she thought that she was supposed to answer everybody had ever told. I mean, the question was open ended as a mean. That is, the sheriff himself did not put a limit. But we could ask things all the time. Uh, in our everyday lives, and we make certain assumptions about what's really being asked. Even if the question is open ended, as you say, in that all that she was admitting to that he did not state any limits. But she saw these limits as being who within the sheriff's department. Well, that's certainly their argument, Your Honor. But there's nothing in the record that would support, uh, the idea that she understood it to be any different. I think that the record shows that or that she could have reasonably understood it to have been any different. The record shows that he asked her the question, and she omitted those names. And also, what do we know about the question? He asked her from the sheriff in an affidavit. Or how do we know what the question allegedly was? The sheriff testified in the record on appeal in this case is essentially the transcript from a hearing from the Texas exact question that he said he asked the question as far as I can. And I'm sorry I can't. I can't put you with something. Not necessarily was gonna come up. But I believe that the actual question was, Tell me who all you told referring. She received that as he's asking me who would end the department. That's what who has authority over. Who all did I tell? Uh, maybe that's reasonable. Maybe that's not reasonable. But we're talking about intentional line. Uh, so how do we know what what she says was the way she took that question? Well, what do we have in the record that you says creates or eliminates any disputed material fact? Then you want disputed material fact about how she took that question. Well, Your Honor, we have in the record her, um, her testimony that she gave the sheriff everyone or she told the sheriff everyone in her chain of command and that she says that she forgot one that you've tried to correct. Is that right? Yes. I left somebody out, but I also it the fact that she left that person out, um, and that how she tried to correct it is also important for the sheriff's qualified immunity. Uh, okay. Before we leave all that, tell me what else is the record that says she either did or did not think the question was limited in some way, despite there's no explicit limitation. She testified in in this hearing that the question in her imitation to it. And so I would take her explanation of the question as showing that she understood the question to include the universe of people with whom she discussed it. Okay, you can leave that. We'll see what Mr Mr says about all that. Okay. Um, Your Honor, Your Honor. Also, the, um, the appellees constitutional rights were not violated because the evidence in the record shows that she never requested a name clearing hearing. The chief deputy, if she could speak to Sheriff Caslow, and then the chief deputy said no. However, it's undisputed that Sheriff Caslow wasn't present whenever she asked to speak with him, and there's no evidence in the record which would show that the appellee actually ever directly asked Sheriff Caslow to speak with him and to ask you about that as well. It seems to me this sort of situation would be easy for the actual decision maker. So hide behind other people. I'm not saying that happened, but but certainly see that he tells a deputy. I don't want to talk to her. We'll get fire on Monday. Uh, there's no need for her to talk to me. She has to talk to me. Tell No. Well, she didn't find anything that says that she's not asking for more discovery before summary judgment. So how do we deal with that? I mean, that's sort of, I think the sense of her argument is that the sheriff was behind all of this, and he was the one that was preventing further conversations. How could a plaintiff ever get to that? Well, Your Honor, in blood, so this court held that, um, a claimant has to seek a name clearing hearing in a way that notifies, uh, her supervisor that she's asking for an opportunity to publicly clear her name. And, uh, in blood blood, so actually dealt with this particular situation itself. Mr Bledsoe, um, asked for the meeting in which he was ultimately terminated to be postponed, and he also asked for the ability to have an attorney present with him. This court held that neither of those things by themselves, even if he asked those things, neither of those things gave proper notice to a, uh, to the supervisors and to the people who ultimately made this decision to terminate him that he was seeking an opportunity to clear his name. And how would you do that? Our case in in Rosenstein addresses specifically what occurred here, and that is what she did in effect is a step toward request for actual review of the decision to discharge. And the court went on to say that's not the same as a request for a hearing, providing a public forum or an opportunity to clear one's name and an name clearing hearing is a term of art. And as we've used it in the cases, and it means that you have to have a public hearing. And beyond that, I'm not quite sure what it is all about. Uh, I mean, it's very it's very vague. And then I don't know. It seems to be completely irrespective of the merits of her discharge. Uh, now we do have a case that says name clearing hearing before discharge. But I mean, she's if she's discharged, that's when the name clearing hearing arises is, uh, and Rosenstein simply says that, uh, you want an opportunity for a public hearing. Now, I don't know what that Uh, who is obligated to give the name clearing hearing? Uh, because what we are doing is not challenging, or at least I mean, it's all very vague. I agree with that. We're not really challenging the merits of her discharge. All we're saying is, okay, she was discharged for lying. But now I wanted a public public hearing to say that I did not lie. And what I have been accused off is not supported by the facts. And that's and then I guess it doesn't say what happens next, whether the hearing officer makes the decision. And then here she's had a public hearing, not by the sheriff's office, but she had a hearing by the unemployment people, whoever it was declared a name. So I don't know what the law is very confused about what we would do, the consequences of it, heights conducted and so on. So she surely did not request, according to Rosenstein, a public hearing to do clearly. So that seems to me the end of it. Your Honor, I would agree. And also one thing that we could look at is the effect that even had the chief deputy said, Yes, let's go talk to the sheriff right now. The effect of that would not have been a public hearing, which would have given her the opportunity to vindicate herself. The effect of that would have been a conversation with the sheriff in his office. It wouldn't have been whatever it is that's complicated. I'm sorry. Whatever it is that's been granted, it would not have been. It would not have been the public hearing that is contemplated by Rosenstein and by blood. So as well, Your Honor. Also, we we simply can't interpret that request to speak with the sheriff as a request for a name clearing hearing because they're two very different things. To paraphrase the words of Judge Jerry Smith and the person asked for an apple, then we can't assume that they're asking for a gold watch in this situation. Um, that's what the that's what the the happily is asking us to do is to assume that her asking for a chat with the sheriff is tantamount to her asking for a public forum in which to vindicate herself. And that simply isn't the case. Um, to build on just jolly's points, I tend to agree. It's hard to say whether this falls closer to blood. So we're closer to Rosenstein. But what was she supposed to do? Because she's not required to use the actual term of art. Is she to request a name clearing hearing? No, Your Honor. She just has to communicate in a way that makes it clear that she's seeking a public forum in which to vindicate herself. And we don't know what what she wanted to talk to the sheriff about. I mean, you say it was just gonna be a conversation with the sheriff, and it wouldn't have been public and all that. But we don't know that, do we? Well, we can, based on what she asked for a talk with the sheriff, there's nothing in there that would allow us to assume that it was going to be anything more than just a than just a conversation with the sheriff. So, um, Your Honor, based on that, I believe my time is up more than a conversation. What she sought to do is to clarify the basis upon which she had been discharged with the with the In other words, I made an error. I want to get before him and tell him I made an error. So it was in terms of Rosenstein just asking for an deal. I think we missed your question. If you are, please stay. I just got notice that my connections unstable or I'm unstable. I couldn't quite read it. Okay, just job. Okay, we all working. I got that warning notice on mine. I got a warning notice, but I think I'm okay now. But just jolly. The last few things you were saying, uh, Mr Ecclesius with lost. You want to restate you want us to move on? Move on. All right, Mr Messer. May it please the court. Andy Messer. I believe Randy Cunningham. This is a case about a deputy sheriff. Randy Cunningham was fired illegally by a sheriff just days after reporting misconduct against the sheriff's prison. Let me ask you to give me the chronology here. We're talking about a was she actually terminated? When was she actually told that she was terminated? She was told, um, there's a Friday, Saturday, Sunday, Monday, Monday. Okay. And request for this hearing request for whatever it was was made when Monday. Uh, so you're not saying it's the request of the deputy sheriff on Friday. It is Monday when she wants her her hearing. Yes, as I understand it from the record on Friday, she was told she was told that she would be able to speak to the sheriff on Monday. She asked to speak to him before that. Yes, either Friday or maybe or Saturday. But I thought before Monday she had asked to speak to the sheriff and was told No, you can't talk to him today. I know with him twice. I I'm not sure if that's in the record. Okay, well, the record will speak for itself. So it may not all be of the same point of view. Um, when did her termination with the reasons that she's lying and whatever the other was, um, went outside the chain of command. When did that become public? Mhm. It certainly became public when he filed his. The sheriff filed the F five, uh, report with Tico that that he had terminated her in the same week. Or is that later? Um, it was probably the same day that he filled that out and actually don't I don't know the date that all I'm getting at here is she wants a name clearing hearing her name doesn't need clearing until there's been publicity about her lying and her going of breaking the rules by going outside the chain of command. Um, I'm not sure that that's all that significant. You may know what's coming and you want to rename cleared. And I don't know there's anything. It's just jolly is pointing out the law. And here's not real well developed. I don't know there's anything and and that would prevent you from getting the benefit of this. If you're an employee, if you ask for it too soon. Uh, but you agree it does need to be a public hearing, and it does need public event that would allow publicity to counter whatever the publicity is. It's negative. I agree that it needs to be a public hearing that seems to be established in the law. In my in our view, that needs to be in front of the sheriff because he is the policymaker for Wood County, and he is the one that terminated her. He's the one that told him to fill out the paperwork to terminate her. He's the one that signed the five. I'm not here. You said it's got to be before the sheriff. It's got to be for the public. Yes, the public agreed. It could be both. But it's not an issue here. I don't know that meeting. Go ahead, Judge Charlie. Who is the result of that meeting? You know, go ahead, Mr Best. Well, because he's the policymaker, it doesn't say I don't understand exactly the amount of due process in the in the parameters of that hearing. But I think he has to be in that hearing and probably has to be the one that makes the decision since he is the policymaker. You say she's not entitled. She's not entitled to a neutral presiding officer in a public hearing. I don't hear a name. It doesn't sound like your process to me. If the accuser is the decider, understand, I don't know the answer to that. I don't know the answer to that. And that's what I'm earlier saying is that it is a term of art. A public hearing means something other than an appeal to the sheriff to change his mind. Well, let me let me talk about that for a second. I know that there has been some discussion about this Rosenstein versus city of Dallas case came out of the court in 1989. And in that case, the two important factors in our view is one. The officer requested access to the city's appeal process. And two, there's a statement in that opinion that says that other officers for the city made it clear to the officer they were not. The officer was gonna get no hearing whatsoever. And in this instance, the evidence in the record is that Brandi Cunningham requested a meeting with the sheriff was told she was gonna have one on Monday. Then then they said, No, you cannot meet with the sheriff. And then they said, We've heard enough from you. And that basically silenced her. So she made the request on that Monday followed up. So there's a pre pre. It was a request on that Monday. And then after that, she won. So both both of those factors to me that she made the request that she was rebuffed and said, We've heard enough from you and then made challenged her F five dishonorable discharge with mentally. She prevailed on. It's currently on appeal. Travis County. Those factors in our view are enough to make a request for a name clearing hearing when you don't have to use the term or the phrase name clearing hearing under the roses. Also, also to your point about the appeal of five, which which, you know, she won. There's questions about whether that's in the record and whether we can consider that. But wasn't that her name clearing hearing? I mean, in effect, hasn't her name been cleared because the dishonorable discharge has been removed? We don't believe so, because if you read read the precedent, the precedent is a name clearing hearing by the terms that I've seen are the governing body. And in this instance, in my view, that is the sheriff because he's the policy maker for Wood County. So it's not when you describe that. Excuse me. But Council, when you describe that earlier, the meeting with the sheriff and how he was the policymaker and that sort of thing, what you described seems squarely within bled so because there it was the board of Alderman, I think, or the city council, and they met behind closed doors and they decided to terminate terminate the plaintiff there. That wasn't a name clearing hearing because it wasn't public and he wasn't deemed to have made a request by asking for the meeting to be delayed and by asking to have his lawyer outside in the hallway with him while they decided. So what you described didn't sound like a name clearing hearing to me, even with the questions under the law on our view by asking a request for the sheriff and being silenced at that same meeting in contesting the F five. Those are sufficient facts under Rosenstein to request a name clearing hearing. And I guess I would also go back to the standard of review, which is you have to accept all of the plaintiff's facts as true. Let me ask. Let me ask you this one question and that what is the remedy that you seek here? What is all remedy that you seek? Seeking a jury trial on under the 14th Amendment right and we're seeking damages damages for what? For loss of for her stigmatizing her name being stigmatized and her loss of employment. She has been stigmatized and she has not been able to find a law enforcement job for 3.5 years, despite many, many attempts. But, Mr. Messer, let me ask you about that. It seems to be looking at Rosenstein, at least as bled so described it. The police officer in Rosenstein wanted to compass contest the decision to fire him requesting appeal. It was effectively asking for an opportunity to prove his name. Oh, and that process would give him a public forum to clear his name before the governing body that discharged him. Seems to me that two things going on here and your client seems primarily in one category, and that is and good lawyering using what you have. It seems to me what she was seeking was a way to challenge this decision before he made it on Friday. It may not be true, but get to him with correcting of something she had said and then really trying to show that she wasn't lying on money. She wouldn't talk about. I don't think clearing her name. It was not being fire. Um, and when you look at where all this comes from, it's Board of Regents versus Roth. And there it said, Spring quarters recognized a procedural due process right to notice opportunity to clear one's name when you've been discharged for reasons that cloud one's name. So it seems to me that what you're really talking about is at some point, whoever is managing it, whoever is in front of was the sheriff or whether somebody entirely independent, you have a public forum where she can put her story on, and it may not clear her name. And I certainly don't see that it overturns the decision, but it's an opportunity for her story to become known. And whoever believes it in the public versus whoever believes the sheriff. Uh, there's no guarantee, but that's what procedural due process allows. And so it seems to me that there's been. I mean, help me with this. Uh, I don't quite see that what she's asked for Monday even suggests. I don't want just go to the sheriff. I want you folks to bring in the press, bring in the public. Give me a hearing that allows me to say the sheriff is a real liar here, and I don't overstate it. That's not what you're saying. But nonetheless, uh, that I have been honest and truthful and actually trying to help the sheriff out by showing the misdeeds of this other person. So I mean, in that what? What is it that makes it clear? She wanted her name cleared for the public as opposed to her name cleared so that the decision can be overturned whether it's ever made public or not. I don't think in my understanding those types. First of all, I agree with all of your legal analysis and the procedures that were do her. That's really the issue to me. She's doing procedure within the state system. It just was later and again. I mean, she challenged it, and she said that the sheriff messed up. But that's not a federal question. Procedural due process on the federal law isn't dependent or even use what state procedures are. We're talking about constitutional due process, right? And so insofar as how the sheriff's bar may have messed up within their own state procedures is not for us. So we're just looking at when and how does she ask for a public forum on your I know magic words, but I don't read in what she did that she was asking for a public forum. She was asking the sheriff where you're wrong. Let's correct this before you fire me. Well, I think you just have to see. Is there a disputed issue of fact, given the facts that are in the record, the facts were all viewed as true and believable from the plant's perspective. All inferences are viewed in her her favor, and the sheriff has to concede our best case in our best cases. She was silenced in that meeting and told We don't need to hear from you anymore, and then subsequently use the state admin procedure under so to contest her F five discharge. And she did ask to speak to the sheriff. Those those factors, in my view, or at least create at a minimum fact issue under the standard of review. But they don't. You know what? They don't. They don't create material factual issues. I assume everything that you said is true. But it's not. None of that is material to the fact of whether she requested and was denied a public hearing to clear her name. And I don't know how it would have been done. Frankly, I mean, if she had requested a public hearing, the onus would clearly be on the sheriff to would not have been the presiding officer. I mean, it would not have been due process, and she's entitled to this hearing under the the principle of due process. Perhaps the only in my view of employment law and representing clients in employment cases I have seen where city councils meet in public to view employment decision. Perhaps the county commissioners could have done the same thing in public to have a hearing that that would that I think would suffice. But it was not within the sheriff's what you've told me. It is not within the sheriff's authority to grant her a hearing before the City Council. He's a county county officer. How can he grant something that he has no authority to grant? It would be the county commissioners. It would probably have to in my in my experience in employment law. Some of these procedures usually are agreed upon by the opposing sides on what how the hearing is going to be conducted. And that's how I would do it. If she if she had specifically asked for a public hearing to clear her name, then the onus would be on the sheriff to provide it some some way. I don't know how it would have been done, but some way you would have had to have done it. I'm assuming I'm assuming that I totally agree with that. Okay, so let me guess. Let me go. And in my view, in our view, we're we're stating that there were just a judge down, multiple issues of material fact and that the sheriff is contesting those and trying to rehash them on appeal. Um, when they have been decided by the district court and because those are fact based denials of a summer judgment based on qualified immunity, we don't believe that the sheriff has invoked this court's jurisdiction and that this court cannot delve into the those fact based denials of qualified. Let me speak briefly about the complaint process where we are advocating that in this very short period of time between Wednesday through Monday, when the complaint was first made by Brandy Cunningham of another deputy allegedly altering a federal government document, which he was two days after her termination, indicted for altering a state government document. I think there are. There are two bases that the sheriff should have recognized that would require him to file a complaint administratively against Miss Cunningham to let her know she was under investigation. She didn't even know she was under investigation. And so if you look at the government code, Chapter 6 14, uh, the Supreme Court in Colorado County versus staff has stated, and I'll quote it from that opinion. Chapter 6 14 does not give an employee your right to continued employment, which is now, I think, undisputed. But it does require compliance with the statutory process before an employee may be permanently encumbered by a damaged damaging discharge record. Supreme Court goes on to state when allegations of misconduct are serious enough to warrant termination, which is what happened in this court. In this case, Supreme Court states a complaint must be filed, investigated and substantiated. And this court in Stem versus Gonzalez or in Gomez in 2016 in addressing this complaint process, analogize the complaint in Chapter 6 14 with the city charter requirement in Henderson versus Sotelo. And in that case, the city charter required consent by the governing body. And so we are saying that the sheriff should have presented a written complaint of allegations of alleged misconduct to the deputy and had an investigation to give her notice of that before she was terminated. That did not happen undisputedly in this case. Let me ask you about the offense for which McGee was indicted and convicted. Do we know what that altering a Texas Department of Criminal Justice document involved, I believe, involving an inmate involving one inmate. All right. Thank you. So we believe because the sheriff, um, did not give a written complaint, never gave notice of what the charges were. Brandi Cunningham, um, never gave a guarantee warning. Never wasn't there at time of termination, did not give her an opportunity for a name clearing hearing that silenced her. We believe that he is not entitled to qualified immunity, and he, um, he should have realized he was constantly constitutionally protected by the 14th Amendment and that reasonable sheriffs under the same or similar circumstances would have done all of these steps before terminating a deputy sheriff. And that's what we're asking this court to recognize and to affirm the district court's denial of summary judgment. All right, Council. We'll hear the rebuttal. Thank you, Your Honor. Um, just a few brief points. First of all, I'd like to discuss, uh, the Apple Lee's argument that she was silenced whenever she asked to speak to Sheriff Caslow. Your Your Honor. Uh, blood. So gives employees who are seeking a name clearing hearing the affirmative duty to ask for a hearing, which is public and which would permit them the opportunity to, um, to vindicate themselves from whatever charges that they're being terminated by. Mm. Your Honor, whether or not that plaintiff or the plaintiff might have been silenced there, she still had an affirmative duty to go out and ask for a name clearing hearing. She could have written a letter. She could have done any number of things. She chose not to do that. And for that reason, she she didn't ask for a name clearing hearing, and therefore she can't. Uh, she can't sustain this cause of action. Uh, Your Honor. Um, also, I would like to briefly address, uh, the Apple Lee's discussions regarding Texas government code section 6 14. Our argument is in our brief, but I just wanted to point out that this court in Sims versus the city of Madisonville affirmatively held that there is no due process, right? Section 6 14 doesn't give law enforcement officers in Texas a due process, right? And so that's this court's already decided that issue. And so, therefore, it's not an issue here, Your Honor. Um, also, the Apple Lee discussed notice by a Garrity warning, but we believe that is a misapplication of what Garrity versus New Jersey says and what its project progeny stands for. Um, Garrity prevents, uh, a law enforcement officer from being coerced, coerced to give criminal incriminating statements under threat of losing their jobs there, and it prevents those statements from being used later on in a criminal proceeding. It's uncontested. There was never a criminal proceeding against Miss Cunningham, and so, therefore, Garrity versus New Jersey just simply doesn't apply to the facts here in this case. Um, also, Your Honor, uh, getting back to really what I believe is the heart of the issue is that no reasonable law enforcement officer and Sheriff Cast Lo's position would have believed that he was being asked for a name clearing hearing, um, just because an employee asked to speak with him under these circumstances or under any other circumstances. Your Honor, in sheriff in Texas, county sheriffs are asked by inmates, employees, citizens every day. Um, for conversations there, people asked to speak with them all the time. A sheriff can't be charged with assuming that a request for an audience with him would actually be a request for something else, such as a name clearing hearing. Uh, nothing that the Apple Lee ever said could have reasonably been interpreted as asking for an opportunity for her to publicly clear her name. Your Honor, the record is replete with evidence that negates, first of all, the majority of the essential elements of the Apple Ease claims and also that shows that not even if even if the appellee had made her claim or had had produced evidence of those elements, uh, the records replete with evidence that would show that not all reasonable law enforcement officers and Sheriff Cast Lo's position would have believed that denying a name clearing hearing under these circumstances and under these facts would have, uh, would have been also violating the Apple Ease due process rights. Your Honor, we would, unless there are any other questions, we would rest on our brief, and we thank you. Well, you both have been helpful. We appreciate making time and your disrupted lives to give us this oral argument. Those are all the cases for today. We are in recess.